UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JESSE STEPENEL-DEVON TAMPLIN,

               Petitioner,              Case No. 2:23-cv-38

v.                                  Honorable Paul L. Maloney

JAMES CORRIGAN,

               Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jesse Stepenel-Devon Tamplin is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On April 22, 2019, Petitioner pleaded guilty in the Berrien County Circuit Court to armed robbery, in violation of Mich. Comp. Laws § 750.529. On August 5, 2019, the court sentenced Petitioner to a prison term of 20 to 70 years.[1]

On February 22, 2023, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      The trial court erred by scoring offense variable 1 at 10 points.

II.     The trial court erred by scoring offense variable 2 at 1 point.

_____

[1] Petitioner is also serving two other sentences imposed by the Berrien County Circuit Court. On January 22, 2014, Petitioner was sentenced to 4 years, 2 months to 14 years' incarceration for an unarmed robbery committed on July 25, 2013. On January 3, 2011, Petitioner was sentenced to 1 year, 11 months to 10 years' incarceration for a breaking and entering with intent committed on November 30, 2010. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=712955 (last visited May 7, 2024). All of Petitioner's sentences have been ordered to run consecutively.

III.    [Petitioner] is entitled to resentencing based on [in]accurate information as OV's 12 and 19 were scored incorrectly. Thereby increasing [Petitioner's] guideline range on both the minimum and maximum ends. [Petitioner] should be resentenced by a different judge because of judicial bias, as the victim's husband was the bailiff [sic] in the courtroom.

IV.    [Petitioner] was denied the effective assistance of Trial Counsel and Appellate Counsel, as guaranteed by the Sixth Amendment of the United States Constitution. In failing to challenge the incorrect OV scores, failure to object or raising all meritorious claims.

(Pet., ECF No. 1, PageID.6–11.) Respondent contends that Petitioner's grounds for relief are meritless.[2] (ECF No. 9.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## **Discussion**

### I.    **Factual Allegations**

On January 16, 2019, Petitioner was around Territorial Road in Benton Harbor, Michigan. (Plea Hr'g Tr., ECF No. 10-5, PageID.185.) At that time, Petitioner had a BB gun on his person. (*Id.*) He approached Denise Reeves and demanded that she give him money. (*Id.*) When Reeves refused, Petitioner pulled up his shirt and showed Reeves the BB gun. (*Id.*, PageID.186.) Petitioner

---

[2] Respondent also contends that habeas grounds III and IV are partially procedurally defaulted. (ECF No. 9, PageID.75.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

testified that he had the BB gun to make someone believe that he had a handgun. (*Id.*) Petitioner took the BB gun out of his waistband and pointed it towards Reeves' face. (*Id.*, PageID.186–187.) Petitioner pulled the trigger and hit Reeves in the face. (*Id.*, PageID.188.) He then dropped the BB gun on the ground and reached for Reeves' keys. (*Id.*) Petitioner testified that he threw Reeves to the ground while they were "struggling with each other." (*Id.*) Petitioner took the car keys, unlocked Reeves' car, and took her purse from the car. (*Id.*, PageID.189.) Petitioner "took off running" and ultimately took approximately $700 or $800 from the purse. (*Id.*, PageID.189–190.)

Petitioner appeared before the trial court to enter his guilty plea on April 22, 2019. (ECF No. 10-5.) He appeared before the trial court for sentencing on June 24, 2019. (ECF No. 10-6.) At that time, Petitioner's counsel raised an issue concerning the scoring of offense variable (OV) 1 at 10 points. (*Id.*, PageID.194.) Counsel asserted that OV 1 should be scored at zero because a BB gun cannot "be used as a firearm as far as scoring." (*Id.*) In response, the prosecutor argued that OV 1 had been scored correctly. (*Id.*, PageID.196.) Petitioner's counsel replied that the victim was struck by a projectile from a weapon, and the court noted that the sentencing guidelines did not contain any guidance for such a situation. (*Id.*) The trial court granted counsel additional time to research the issue. (*Id.*, PageID.198.)

The parties returned for Petitioner's sentencing hearing on August 5, 2019. (ECF No. 10-7.) At that time, Petitioner's counsel represented that neither he nor the prosecutor considered the BB itself to be a weapon. (*Id.*, PageID.212.) The prosecutor, however, asserted that OV 1 was properly scored at ten. (*Id.*, PageID.213.) The court ultimately ruled that OV 1 would remain scored at ten, concluding that the BB constituted a weapon for purposes of the offense variables. (*Id.*, PageID.214.) Petitioner's counsel also challenged the scoring of OV 2, asking that it be scored

3

at zero because a BB gun should not be considered to be a "potentially lethal weapon." (*Id.*, PageID.216.) The court overruled that objection and noted that OV 2 would be scored at 1. (*Id.*)

Petitioner, through counsel, subsequently filed a delayed application for leave to appeal to the Michigan Court of Appeals, arguing that the trial court erred in the scoring of OVs 1 and 2. (ECF No. 10-10, PageID.277.) The court of appeals denied Petitioner's delayed application for leave to appeal in an order entered on March 24, 2020. (*Id.*, PageID.273.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on September 8, 2020. *See People v. Tamplin*, 947 N.W.2d 807 (Mich. 2020).

Petitioner then returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, challenging the scoring of two other OVs and arguing that the trial judge was biased because the bailiff's wife was Petitioner's victim. Petitioner also claimed that trial and appellate counsel rendered ineffective assistance for not raising those claims. (ECF No. 10-8.) The trial court denied Petitioner's motion in an order entered on August 9, 2021. (ECF No. 10-9.) The court of appeals denied Petitioner's *pro per* delayed application for leave to appeal on December 22, 2021. (ECF No. 10-12, PageID.370.) The Michigan Supreme Court denied his *pro per* application for leave to appeal on July 28, 2022. *See People v. Tamplin*, 977 N.W.2d 539 (Mich. 2022). This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A.  Grounds I, II, and III—Scoring of OVs

In habeas grounds I and II, Petitioner asserts that the trial court erred in the scoring of OVs 1 and 2. (Pet., ECF No. 1, PageID.6–7.) Petitioner contends that OV 1 should have been scored at zero because the BB and BB gun do not constitute weapons. (*Id.*, PageID.6.) He argues further that OV 2 should have been scored at zero because a BB gun is not a potentially lethal weapon. (*Id.*, PageID.7.) In habeas ground III, Petitioner contends that OV 12 should not have been scored at 25 points and that OV 19 should not have been scored at 10 points. (*Id.*, PageID.9.)

OV 1 scores the aggravated use of a weapon during an offense. *See* Mich. Comp. Laws § 777.31. The statute provides that OV 1 is scored at 10 points if "[t]he victim was touched by any other type of weapon." *Id.* § 777.31(1)(d). OV 2 scores the lethal potential of the weapon possessed or used during the offense. *See* Mich. Comp. Laws § 777.32. Under that statute, OV 2 is scored at 1 point if the "offender possessed or used any other potentially lethal weapon." *Id.* § 777.32(1)(e). OV 12 is used to score contemporaneous felonious criminal acts. *See* Mich. Comp. Laws § 777.42. Under that section, Ov 12 is scored at 25 points if "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." *Id.* § 777.42(1)(a). Finally, OV 19 deals with threats to the security of a penal institution as well as interference with the

administration of justice or rendering of emergency services. *See* Mich. Comp. Laws § 777.49. Under that section, OV 19 is scored at 10 points if the "offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." *Id.* § 777.49(c).

Petitioner raised his challenges to the scoring of OVs 1 and 2 on direct appeal, and the court of appeals summarily rejected them by denying Petitioner's delayed application for leave to appeal. Specifically, the court of appeals denied Petitioner's application "for lack of merit in the grounds presented." (ECF No. 10-10, PageID.273.) Petitioner raised his challenges to the scoring of OVs 12 and 19 in his Rule 6.500 motion, and the trial court rejected them, concluding that OVs 12 and 19 had been correctly scored in light of the court's discussion of relevant state case law. (ECF No. 10-9, PageID.259–267.)

As an initial matter, claims concerning the improper application of sentencing guidelines are state law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (concluding that alleged violation of state law with respect to sentencing is not subject to federal habeas relief). However, in his brief in support of his habeas petition, Petitioner appears to suggest that the trial court's scoring of these various OVs was based upon inaccurate information and, therefore, that the resulting sentence violated his due process rights. (ECF No. 1-1, PageID.19–21.) As discussed below, Petitioner's claims are meritless.

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United*

*States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447, 92 S.Ct. 589; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. Rather, Petitioner argues that for purposes of OV 1, a BB gun does not meet the definition of a firearm and, therefore, the BB itself is not a weapon. (Pet., ECF No. 1, PageID.6.) He asserts further that, for purposes of OV 2, a BB gun is not a potentially lethal weapon. (*Id.*, PageID.7) Petitioner also believes that he should not have received 25 points for OV 12 because the other charges were dismissed as a result of Petitioner's plea and so there were no other convictions. (*Id.*, PageID.9.) Finally, Petitioner contends that he should not have received points for OV 19 because, when Petitioner fled upon seeing the police, "[he] was not given a command to stop, but was simply referenced as 'hey.'" (*Id.*) Petitioner also suggest that "there isn't a conviction that supports a scoring, as the charge of fleeing and eluding was dismissed." (*Id.*)

Petitioner's arguments regarding the application of these OVs, however, are purely matters of state law. The state courts' determinations that the OVs were properly scored conclusively resolve the issues; they are axiomatically correct because the decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

9

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, any suggestion that the evidence supporting these offense variables was insufficient is also purely a matter of state law. The Sixth Circuit has described the scope of constitutional protection at sentencing with regard to the burden of proof as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016).

There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process. *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 156 (1997). *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety; it merely held that a preponderance of the evidence standard of persuasion

was constitutionally acceptable, even for acquitted conduct. Even if the State of Michigan requires

that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is

a matter of state law, not the federal Constitution. Thus, any sufficiency of the evidence claim for

sentencing, at least for a non-capital offense, is not cognizable on federal habeas review. This same

analysis applies to Petitioner's challenges to the scoring of OVs 1, 2, 12, and 19.

Petitioner has failed to show that the state courts' rejection of his sentencing claims is

contrary to, or an unreasonable application of, clearly established federal law. Accordingly,

Petitioner is not entitled to relief with respect to habeas grounds I, II, and the portion of habeas

ground III that challenges the scoring of OVs 12 and 19.

### B.      Ground III—Judicial Bias

As part of habeas ground III, Petitioner contends that he should "be resentenced by a

different judge because of judicial bias, as the victim's husband was the bailiff in the courtroom."

(Pet., ECF No. 1, PageID.9.) Petitioner asserts that the trial court allowed the victim's husband to

"give a victim impact statement in regards to his wife being assaulted." (*Id.*) Petitioner suggests

that the trial court allowed him to "give a lengthy statement because he was a retired police officer"

who worked in the trial judge's courtroom. (*Id.*) Petitioner believes that "there is no doubt that his

statement and position was heavily influential in [Petitioner] receiving a sentence at the higher end

of his guidelines." (*Id.*)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

In the present case, the trial court judge sentenced [Petitioner] to the exact sentence
recommended by the probation agent in the PSIR to a minimum of 228 months to
a maximum of 50 years. This is well below the top of the advisory sentencing
guidelines which, based on [Petitioner's] scoring[,] would be 285 months with a
maximum of life.

[Petitioner's] claim is based upon the testimony at sentencing of Victim's husband,
a retired police officer who was also alleged by [Petitioner] to have been employed
as a bailiff. Having a former member of law enforcement testify at a sentencing

hearing hardly qualifies as a threat of judicial bias under any rule. Police officers testify in nearly every criminal case. If that would subject a judge to disqualification on the basis of bias, then almost no criminal cases could be tried. Notably, the victim's husband has never been employed as a bailiff in the Berrien County Trial Court.

(ECF No. 10-9, PageID.269.)

In his § 2254 petition, Petitioner now asserts that "[t]here lies the great chance that the judge, the ba[i]life, and the ba[i]liff's wife all [enjoyed] a close friendship, maybe even discussed the case off the record in passing convers[a]tion. The chance that this may have occurred is germane to the possibility that this could have actually occurred." (ECF No. 1-1, PageID.23.) Petitioner, therefore, appears to suggest that the trial court erred in not finding the presence of actual judicial bias.

As an initial matter, actual judicial bias amounts to structural error that is not susceptible to harmless error analysis. *See Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927) (holding that a judge with a direct, personal, substantial pecuniary interest in reach a conclusion against [the criminal defendant] in his case" was constitutionally disqualified)); *see also Neder v. United States*, 527 U.S. 1, 8 (1999) (same); *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (stating that "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no ***actual*** bias against the defendant or interest in the outcome of his particular case." (citations omitted, emphasis added)). But many circumstances that lead a criminal defendant to question a judge's impartiality do not involve "actual bias:"

[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828, 106 S.Ct. 1580, 1588–1589, 89 L.Ed.2d 823 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. *See, e.g., Aetna, id.*, at 820–821, 106 S.Ct., at 1584–1585; *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71

L.Ed. 749 (1927); 28 U.S.C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a) (1980)

*Bracy*, 520 U.S. at 904.

A judge's conduct at trial may be "characterized as 'bias' or 'prejudice'" only if "it is so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016) (internal quotation marks omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey*, 273 U.S. at 523; (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 579 U.S. at 8. Beyond that, the courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). As the Sixth Circuit has noted:

> The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).

*Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

13

Petitioner's bias claim does not implicate the indicia of bias set forth in *Tumey*, *Offut*, and *Williams*. Nothing in the record suggests that the trial judge had a pecuniary interest in Petitioner's case, that the trial judge became embroiled with Petitioner, and that the judge had prior involvement in the matter as a prosecutor. Rather, Petitioner categorizes his claim as akin to one where the judge "demonstrated a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate." (ECF No. 1-1, PageID.22.) In support of his argument, Petitioner cites the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540 (1994).

The petitioners in *Liteky* had been charged with willful destruction of United States property. *Id.* at 542. Prior to trial, they moved to disqualify the judge based upon "events that had occurred during and immediately after an earlier trial, involving petitioner Bourgeois, before the same District Judge." *Id.* Specifically, the petitioners argued that, during that earlier case,

> the judge had displayed "impatience, disregard for the defense and animosity" toward Bourgeois, Bourgeois' codefendants, and their beliefs. The alleged evidence of that included the following words and acts by the judge: stating at the outset of the trial that its purpose was to try a criminal case and not to provide a political forum; observing after Bourgeois' opening statement (which described the purpose of his protest) that the statement ought to have been directed toward the anticipated evidentiary showing; limiting defense counsel's cross-examination; questioning witnesses; periodically cautioning defense counsel to confine his questions to issues material to trial; similarly admonishing witnesses to keep answers responsive to actual questions directed to material issues; admonishing Bourgeois that closing argument was not a time for "making a speech" in a "political forum"; and giving Bourgeois what petitioners considered to be an excessive sentence. The final asserted ground for disqualification—and the one that counsel for petitioners described at oral argument as the most serious—was the judge's interruption of the closing argument of one of Bourgeois' codefendants, instructing him to cease the introduction of new facts, and to restrict himself to discussion of evidence already presented.

*Id.* at 542–43.

The Supreme Court rejected the petitioners' arguments that the judge should have recused himself. In its analysis, the Court noted that "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been

14

shown to be a thoroughly reprehensible person." *Id.* at 550–51. The Court cautioned, however,

that "the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion

it produced were properly and necessarily acquired in the course of the proceedings, and are indeed

sometimes (as in a bench trial) necessary to completion of the judge's task." *Id.* at 551. The Court

then set forth the showing petitioners needed to make to succeed on a judicial bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or
> partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. [563, 583 (1966)].
> In and of themselves (*i.e.*, apart from surrounding comments or accompanying
> opinion), they cannot possibly show reliance upon an extrajudicial source; and can
> only in the rarest circumstances evidence the degree of favoritism or antagonism
> required (as discussed below) when no extrajudicial source is involved. Almost
> invariably, they are proper grounds for appeal, not for recusal. Second, opinions
> formed by the judge on the basis of facts introduced or events occurring in the
> course of the current proceedings, or of prior proceedings, do not constitute a basis
> for a bias or partiality motion unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible. Thus, judicial remarks
> during the course of a trial that are critical or disapproving of, or even hostile to,
> counsel, the parties, or their cases, ordinarily do not support a bias or partiality
> challenge. They *may* do so if they reveal an opinion that derives from an
> extrajudicial source; and they *will* do so if they reveal such a high degree of
> favoritism or antagonism as to make fair judgment impossible. An example of the
> latter (and perhaps of the former as well) is the statement that was alleged to have
> been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a
> World War I espionage case against German-American defendants: "One must
> have a very judicial mind, indeed, not [to be] prejudiced against the German
> Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal
> quotation marks omitted). *Not* establishing bias or partiality, however, are
> expressions of impatience, dissatisfaction, annoyance, and even anger, that are
> within the bounds of what imperfect men and women, even after having been
> confirmed as federal judges, sometimes display. A judge's ordinary efforts at
> courtroom administration—even a stern and short-tempered judge's ordinary
> efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).[3] Overall, the Court concluded, the comments

made by the judge during the prior proceeding did not "display[] deep-seated and unequivocal

antagonism that would render fair judgment impossible." *Id.* at 556.

---

[3] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit
has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under

Notably, in *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), the Sixth Circuit conducted an exhaustive analysis of Supreme Court precedent governing judicial bias. *See id.* at 393–407. The Sixth Circuit provided the following summary following its analysis:

> In sum, one *could* read the Supreme Court precedent in this area as holding that the probability of bias—based on a likelihood or appearance of bias—can be sufficient to disqualify a judge and violate a party's constitutional right to due process. But, one *could also* read these cases as holding that, other than in cases of contempt arising in a closed (secret) hearing, only actual bias or pecuniary-interest-based probability is sufficient—and, moreover, that a matter of mere kinship has, as of yet, never been acknowledged as a sufficiently biasing interest. Regardless of the preferred reading—or the merits of one reading over the other—the fact that there are two or more reasonable readings compels the conclusion that this precedent is not "clearly established."

*Id.* at 407.

The Sixth Circuit has further noted that judicial bias may be established when "the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the [c]ourt with one of the parties." *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (internal quotation marks and citations omitted). Moreover, a judge may commit misconduct when he "abandons his proper rule and assumes [the role] of [an] advocate" when questioning a witness. *Id.* (alteration in original). The Sixth Circuit has set forth the following considerations when analyzing a claim of judicial misconduct or bias: "(1) 'the nature of the issues at trial,' including how lengthy and complex the trial is; (2) 'the conduct of counsel,' and whether the attorneys are 'unprepared or obstreperous,'; and (3) 'the conduct of witnesses.'" *United States v. Smith*, 706 F. App'x 241, 254 (6th Cir. 2017) (quoting *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979). Moreover, the Sixth Circuit "has considered the tone of the judicial interruptions, the extent to which they were directed at one side

---

the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

16

more than the other, and the presence of any curative instructions at the close of the proceedings." *United States v. Castro*, 405 F.3d 405, 410 (6th Cir. 2005). "[T]he rule concerning judicial interrogation is designed to prevent judges from conveying prejudicial messages to the jury. It is not concerned with the damaging truth that the questions might uncover." *United States v. Martin,* 189 F.3d 547, 554 (7th Cir. 1999).[4]

Upon consideration of the foregoing, and considering Petitioner's arguments, the Court cannot say that the trial court's conclusions regarding Petitioner's judicial bias claim are contrary to, or an unreasonable application of, clearly established federal law. At sentencing, the victim's husband stated only that he had "spent more than 30 years in law enforcement." (ECF No. 10-6, PageID.204.) Petitioner has not presented any evidence, much less clear and convincing evidence, to overcome the trial court's factual notation that the victim's husband had never been employed as a bailiff for the Berrien County courts. Petitioner's claim of judicial bias is entirely based upon speculative notions that the victim's husband was employed as a bailiff and that there is a chance that the victim, her husband, and the judge are friends who discussed Petitioner's case. Petitioner, however, provides no evidence to support these speculative beliefs. Speculation alone is insufficient to maintain a judicial bias claim. *See Barnes v. Warden, Ross Corr. Inst.*, No. 19-3389, 2019 WL 5576345, at *4 (6th Cir. Sept. 16, 2019); *see also Smith v. Caterpillar, Inc.*, 304 F. App'x 391, 396 (6th Cir. 200*) (noting that "subjective speculation alone is insufficient to support . . . allegation[s] of judicial bias"). Accordingly, for the foregoing reasons, Petitioner is not entitled to relief with respect to the judicial bias aspect of habeas ground III.

---

[4] The Court recognizes that decisions from the circuit courts do not constitute clearly established federal law for purposes of AEDPA. *See Parker v. Matthews*, 567 U.S. 37, 48 (2012). However, these decisions provide insight into the factors that appellate courts take into consideration when analyzing a defendant's claim regarding judicial bias.

**C.      Ground IV—Ineffective Assistance of Trial and Appellate Counsel**

In habeas ground IV, Petitioner contends that trial and appellate counsel rendered ineffective assistance. (Pet., ECF No. 1, PageID.11.) Specifically, Petitioner faults trial counsel for not objecting to the scoring of OVs 12 and 19, thereby failing to preserve that issue for review. (*Id.*) Petitioner also faults appellate counsel for not arguing trial counsel's ineffectiveness on direct appeal. (*Id.*) Petitioner further argues that appellate counsel failed to file a motion to withdraw Petitioner's plea, and also failed to inform Petitioner that he could file a *pro per* supplemental brief in the court of appeals. (ECF No. 1-1, PageID.25–26.) Petitioner's § 2254 petition can also be construed to assert that trial and appellate counsel failed to object to the alleged judicial bias discussed *supra*.

**1.      Standard of Review**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

18

determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his claims of ineffective assistance in his Rule 6.500 motion, and the trial court addressed them under the following standard:

> A defendant bears the burden of establishing ineffective assistance of counsel. *People v. Hoag*, 460 Mich. 1, 6 (1999). To establish ineffective assistance of counsel, a defendant must first establish that the counsel's performance fell below an objective standard of reasonableness and must overcome a strong presumption that counsel's assistance constituted sound trial strategy. *People v. Stanaway*, 446 Mich. 643, 687 (1994). Second, a defendant must show that there is a reasonable probability that, in the absence of counsel's error, the result of the proceedings would have been different. *Id.* at 687–688.
>
> * * *
>
> Good cause for failing to raise an issue on appeal may be established by demonstrating ineffective assistance of appellate counsel "or by showing that some external factor prevented counsel from previously raising the issue." *People v. Reed*, 449 Mich. 375, 378; 535 N.W.2d 496 (1995). Defendant bears the burden of establishing ineffective assistance of counsel. *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999). The test for ineffective assistance of appellate counsel is the same test for ineffective assistance of counsel. *People v. Pratt*, 254 Mich. App. 425, 430; 656 N.W.2d 866 (2002).

(ECF No. 10-9, PageID.269–270.) In *Stanaway*, the Michigan Supreme Court identified *Strickland* as the source of the standard. *See Stanaway*, 521 N.W.2d at 579. Thus, there is no question here that the trial court applied the correct standard.

The trial court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests

that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the trial court's determinations were based on an unreasonable application of *Strickland* or if the trial court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

After setting forth the standard, the trial court rejected Petitioner's claims of ineffective assistance, stating:

> Here, [Petitioner's] claim of ineffective assistance of counsel is based upon both trial and appellate counsel's alleged failure to object to the scoring of OV 12, OV 19, and judicial bias. As discussed above [Petitioner] has misunderstood the statutory requirements, both for scoring offense variables and for establishing judicial bias. As [Petitioner] has not produced any other evidence of either his trial or appellate counsel's failure to meet an objective standard of reasonable performance, his claim of ineffective assistance is without merit.

(ECF No. 10-9, PageID.271.)

Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. As thoroughly discussed *supra*, in Part III.A, the trial court determined that OVs 12 and 19 were properly scored under state law. That determination binds this Court. *See Wainwright*, 464 U.S. at 84 (1983); *see also Bradshaw*, 546 U.S. at 76. In that circumstance, Petitioner cannot show that trial and appellate counsel's failure to challenge the scoring of OVs 12 and 19 prejudiced Petitioner in any way. Accordingly, Petitioner is not entitled to relief with respect to this assertion of ineffective assistance.

Furthermore, as discussed *supra* in Part III.B, the trial court's rejection of Petitioner's judicial bias claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner simply has not demonstrated that any such bias existed, and it would have been futile for trial and appellate counsel to argue otherwise. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, any claim that counsel rendered ineffective assistance by failing to challenge the alleged bias fails.

Finally, Petitioner faults appellate counsel for not raising trial counsel's ineffectiveness on direct appeal, for not filing a motion to withdraw Petitioner's plea, and for not informing Petitioner that he could file a *pro per* supplemental brief on direct appeal. First, because Petitioner's claims of ineffective assistance of trial counsel lack merit, appellate counsel's failure to raise such claims "on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Moreover, Petitioner's conclusory allegations concerning appellate counsel's failure to file a motion to withdraw Petitioner's plea

22

and failure to inform Petitioner that he could file a *pro per* supplemental brief are insufficient to justify federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (noting that conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012) (citing *Workman* and affirming the denial of habeas relief for conclusory claims). Petitioner provides no argument regarding the basis on which counsel should have moved to withdraw Petitioner's plea, nor does he explain what issues he would have raised in a *pro per* supplemental brief and how his lack of knowledge concerning such a brief prejudiced him in any way.

In sum, Petitioner has not demonstrated that the trial court's rejection of his claims of ineffective assistance of trial and appellate counsel is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated:   May 16, 2024                          /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge